Harold **BARNETT**, Plaintiff,

v.

**ANACONDA COMPANY** and Anaconda Wire and Cable Company, Defendants.

United States District Court
S. D. New York.

Feb. 17, 1965.

Louis Kipnis, New York City, for plaintiff.

Chadbourne, Parke, Whiteside & Wolff, New York City, for defendant Anaconda Co., Melvin D. Goodman, Edward C. McLean, Jr., James W. Hagan, New York City, of counsel.

FREDERICK van PELT BRYAN, District Judge:

Plaintiff alleges that he is a minority stockholder (100 shares) of Anaconda

Wire and Cable Company (Wire and Cable), a Delaware corporation now dissolved. Prior to dissolution, more than 73% of the stock of Wire and Cable was owned by defendant Anaconda Company (Anaconda). The shares of both companies were listed on the New York Stock Exchange. Plaintiff brings this action against Anaconda in a representative capacity on behalf of himself and all minority stockholders similarly situated and derivatively on behalf of Wire and Cable, naming Wire and Cable as a nominal defendant.

There is no diversity jurisdiction asserted here. The claims asserted by the plaintiff are alleged to arise under the Securities Act of 1933, § 17(a), 15 U.S.C. § 77q(a), and the Securities Exchange Act of 1934, §§ 10(b), 14(a), 15 U.S.C. §§ 78j(b), 78n(a). Jurisdiction is predicated solely on § 22(a) of the 1933 Act, 15 U.S.C. § 77v(a), and § 27 of the 1934 Act, 15 U.S.C. § 78aa.

Defendant Anaconda now moves to dismiss the amended complaint pursuant to Rules 12(b) (1) and 12(b) (6), F.R.Civ. P., for want of subject matter jurisdiction and failure to state a claim upon which relief can be granted. In the alternative, Anaconda seeks to have this court decline jurisdiction on the ground that the action involves the administration and supervision of the affairs of a Delaware corporation, that should be decided by the Delaware courts, or, in any event, to have the action stayed pending determination of a suit of similar import brought by plaintiff in the Delaware Chancery Court. Affidavits have been submitted in support of the alternative branch of the motion.

The questions raised concern the extent to which actions primarily involving minority stockholders' rights under state law may be maintained in the federal courts under the umbrella of the federal Securities Acts. Aspects of these questions have been arising with increasing frequency.

The amended complaint here centers on transactions by which all of the assets of Wire and Cable were conveyed to Wireco, Inc., a newly organized wholly owned Delaware subsidiary of Anaconda, in consideration for 590,773 shares of Anaconda capital stock delivered to Wire and Cable. Wire and Cable was dissolved, and on its liquidation the Anaconda stock was distributed to the Wire and Cable stockholders. Wireco, with its name changed to Anaconda Wire and Cable Co., continues the business formerly conducted by Wire and Cable.

An agreement was entered into between Wire and Cable, Anaconda and Wireco dated October 25, 1963, providing for these transactions subject to the approval of stockholders holding two-thirds of the Wire and Cable shares, as required by Delaware law. Such approval was plainly a foregone conclusion, however, since Anaconda owned more than 73% of the Wire and Cable stock. A notice of stockholders' meeting for December 10, 1963, and a proxy statement were sent out to Wire and Cable stockholders on November 18, 1963. The stockholders' meeting approved the agreement, which was consummated on December 31, 1963. The dissolution and stock distribution provided for then took place.

On November 19, 1963, almost a month before the stockholders' meeting was scheduled to take place, plaintiff commenced this action upon a complaint seeking to enjoin the consummation of the agreement and to have the court appoint an "independent fiscal officer" to "assist Wire and Cable to renegotiate" the terms of the sale of its assets, and to "provide to dissenting stockholders the right to obtain the fair and full value of their shares if new terms are unsatisfactory to them." A motion to dismiss the complaint made by Anaconda on December 6, 1963, was withdrawn when plaintiff requested leave to serve an amended complaint. No further steps in this action were taken by plaintiff until after transactions had been consummated.

On December 6, 1963, plaintiff also instituted a representative and derivative

action in the Chancery Court of Delaware against Wire and Cable, certain of its officers and directors and Anaconda, likewise attacking the proposed transaction and seeking preliminary and permanent injunctive relief against its consummation. The allegations of the complaint in that action were similar to those of the amended complaint here, plaintiff claiming that rights of the Wire and Cable minority would be impaired if the transaction was consummated. In addition to injunctive relief the complaint sought damages and an accounting of any profits which might have been derived from the dealings complained of. A motion for a temporary restraining order was denied from the bench by the Delaware Chancellor. Plaintiff's later motion for a preliminary injunction was withdrawn. Apparently no further steps have been taken in the Delaware action, the damage and accounting aspects of which remain pending and undetermined.

On January 27, 1964, the plaintiff filed, in the action in this court, the amended complaint which is the subject of the present motions. It alleges a "plan and scheme" by the officers and directors of Anaconda in concert with interlocking officers and directors of Wire and Cable to acquire the assets of Wire and Cable for an inadequate consideration so as to deprive its minority stockholders of their "statutory rights to obtain the true and full value of their shares." [1] This scheme, it is alleged, was carried out by the agreement which has been described and its consummation.

In implementation of the scheme it is alleged that the proxy statement for the special meeting of Wire and Cable stockholders to approve the transaction, called for December 10, 1963, was false or misleading and omitted material facts.

Plaintiff claims that audited balance sheets for relevant final periods of Anaconda and Wire and Cable were omitted from the proxy statement, earnings and book value comparisons were distorted in favor of Anaconda and other facts were distorted or omitted. Among alleged "adverse consequences" of the transactions on the minority are the deprivation of "rights to have their stock appraised" and of a New York Stock Exchange listing for transactions in their shares, the timing of the December 10 meeting so as to deprive them of final, audited year end Wire and Cable figures, disadvantages as Anaconda stockholders, and the forfeiture of a large Wire and Cable earned surplus.

It is affirmatively alleged that at the December 10 meeting Anaconda voted its more than 73% of the Wire and Cable shares for approval of the transaction, although whether and how plaintiff voted is not stated.

On the first and representative claim plaintiff seeks to obtain from Anaconda for the minority stockholders the "true and full dollar value for their shares." On the second and derivative claim plaintiff seeks to recover on behalf of Wire and Cable "unjust enrichment" of Anaconda resulting from the transaction, alleged in the complaint to be some 35 million dollars. He asks an accounting in equity to determine the sums due and also the usual allowance of counsel fees and expenses.

I will assume that if plaintiff is able to sustain the allegations of his amended complaint, he has stated some claim for relief under state law. The question here is whether he has alleged claims under the Securities Act of 1933 and the Securities Exchange Act of 1934 which

---

1. Plaintiff does not specify these statutory rights, although he does later refer to the right of minority shareholders "to have their stock appraised." Under Delaware law a dissenting stockholder has a right of appraisal, which is available in cases of merger or consolidation but not in cases of sales of assets even when immediately followed by dissolution. 8 Del.Code Ann. § 262; Hariton v. Arco Electronics, Inc., 182 A.2d 22 (Del.Ch. 1962), aff'd, 188 A.2d 123 (Del.1963); Orzeck v. Englehart, 195 A.2d 375, 377–378 (Del.1963) (dictum).

are cognizable in the federal courts absent diversity.

Though the amended complaint is couched in terms of the two Securities Acts generally, the only sections which plaintiff claims bring the action within the purview of these Acts are § 17(a) of the 1933 Act, and §§ 10(b) and 14(a) of the 1934 Act. Section 14(a) of the 1934 Act and SEC Rule 14a–9 implementing it, proscribe the use of proxy solicitations containing false and misleading statements or omissions of material fact. Section 17(a) of the 1933 Act, § 10(b) of the 1934 Act and SEC Rule 10b–5 promulgated thereunder deal with manipulative schemes and devices and fraud in connection with the purchase and sale of securities.

■■ It is now settled that federal private rights of action may arise in favor of a corporation or its stockholders for violation of § 14(a). J. I. Case v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). Private rights of action have also been recognized for violation of §§ 17(a) and 10(b). See, e. g., Ruckle v. Roto American Corp., 339 F. 2d 24 (2 Cir. 1964); Matheson v. Armbrust, 284 F.2d 670 (9 Cir. 1960), cert. den., 365 U.S. 870, 81 S.Ct. 904, 5 L.Ed. 2d 860 (1961); Hooper v. Mountain States Secs. Corp., 282 F.2d 195 (5 Cir. 1960), cert. den., 365 U.S. 814, 81 S. Ct. 695, 5 L.Ed.2d 693 (1961); Speed v. Transamerica Corp., 235 F.2d 369 (3 Cir. 1956); Fischman v. Raytheon Mfg. Co., 188 F.2d 783, 787 n. 2 (2 Cir. 1951) (dictum). But this does not mean that the Securities Acts have swallowed the whole body of state statutory and common law covering the internal administration of the affairs of corporations and the fiduciary obligations of those who manage and control them. An allegation that specific sections of the Securities Acts have been violated does not necessarily give rise to a federal private right of action absent some connection between the alleged violation and the injury claimed.

■ It has become increasingly common for minority shareholders claiming a grievance to sue in the federal courts upon the assumption that all violations of duties or obligations in the field of corporate affairs fall within the purview of the federal Securities Acts. But it must be remembered that, absent diversity, federal jurisdiction may not be invoked unless the controversy "arises" under the laws of the United States alleged to have been violated. 28 U.S.C. § 1331(a). As Mr. Justice Cardozo said in Gully v. First Nat'l Bank, 299 U.S. 109, 115, 57 S.Ct. 96, 99, 81 L.Ed. 70 (1936), "[n]ot every question of federal law emerging in a suit is proof that a federal law is the basis of the suit." A careful analysis must be made to determine whether the claim of right on which federal suit is brought has its basis in a violation of federal law. See also Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); Cuyahoga River Power Co. v. Northern Ohio Traction & Light Co., 252 U.S. 388, 397, 40 S.Ct. 404, 64 L. Ed. 626 (1920); Wells v. Universal Pictures Co., 166 F.2d 690 (2 Cir. 1948).

■■ Although Congress, in enacting the Securities Acts, intended to protect a broad spectrum of investors' rights against exploitation, it did not pre-empt the whole field of corporate affairs and transform the federal courts into a general forum to oversee them. See O'Neill v. Maytag, 339 F.2d 764 (2 Cir. 1964); Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2 Cir.), cert. den., 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). The question in each case is whether the claimed right of action arises under the sections of the Securities Acts relied upon and, whether the complaint states the requisites of a claim under such sections. That is the question here.

*Section 14(a) of the 1934 Act.*

In J. I. Case v. Borak, supra, the Supreme Court held that a minority stockholder stated a good claim under § 14

(a)[2] by alleging "that the merger [under attack] was approved at the [stockholders'] meeting by a small margin of votes and was thereafter consummated [and]; that the merger would not have been approved but for the false and misleading statements in the proxy solicitation material * * *." 377 U.S. at 430, 84 S.Ct. at 1558. The contrast between the allegations in J. I. Case and those in the amended complaint here points up the marked distinction between the two cases.

█ Here plaintiff affirmatively alleges that Anaconda owned "upwards of 73% of the outstanding capital stock of Wire and Cable" and voted that stock in favor of the transaction attacked. Under Delaware corporation law approval by stockholders holding a majority of shares is sufficient to authorize the sale of all of the assets of a corporation, and dissolution may be authorized by stockholders holding two-thirds of the shares. 8 Del.Code Ann. §§ 271, 275(c). There has been no claim here that these technical requirements have not been fully complied with, nor could there well be. It scarcely could be said that Anaconda, the alleged villain in the piece, was misled by the claimed false and misleading statements in and omissions from the proxy material, or that the votes of its stock were influenced thereby. Plainly, the plaintiff was not misled either since he commenced both this action and the

Delaware action well prior to the stockholders' meeting of December 10, 1963 (although this in itself would not bar this action). Indeed, it is not alleged that any minority shareholder was misled—quite apart from the fact that minority votes, including such proxies as Anaconda is alleged to have procured, could not conceivably have influenced the result at the meeting.

In J. I. Case the Supreme Court pointed out that it had been alleged that the merger complained of "would not have been approved but for the false and misleading statements in the proxy solicitation material" and said that "the causal relationship of the proxy material and the merger are questions of fact to be resolved at trial." 377 U.S. at 431, 432, 84 S.Ct. at 1559. Here there is no question of fact as to causal relationship between the proxy material and the transactions under attack. The "but for" element—the element of causation—does not and, indeed, could not exist. The transactions under attack did not result from the issuance of the allegedly misleading proxy material which, in view of the affirmative and concededly true allegation as to Anaconda's 73% stock holdings, could not have had anything to do with the approval and consummation of such transactions.

█ It is generally the rule that civil liability is implied from violation of a legislative enactment only when the in-

---

2. "It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of any national securities exchange or otherwise to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered on any national securities exchange in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

The Securities and Exchange Commission has adopted rules to implement this

section. Rule 14a–9, 17 C.F.R. § 240.-14a–9, provides:

"No solicitation subject to §§ 240.14a–1 to 240.14a–10 shall be made by means of any proxy statement, form of proxy, notice of meeting, or other communication written or oral containing any statement which at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading."

jury claimed has been caused by that violation. Restatement, Torts, § 286(d) (1934). This rule has been applied to private rights of action asserted under many other sections of the Securities Acts. Downing v. Howard, 162 F.2d 654 (3 Cir.), cert. den., 332 U.S. 818, 68 S.Ct. 155, 92 L.Ed. 395 (1947) (Public Utility Holding Company Act of 1935, § 4, 15 U.S.C. § 79d); Baird v. Franklin, 141 F.2d 238 (2 Cir.), cert. den., 323 U.S. 737, 65 S.Ct. 38, 89 L.Ed. 591 (1944) (Securities Exchange Act of 1934, § 6(b), 15 U.S.C. § 78f(b)); Meisel v. North Jersey Trust Co., 218 F.Supp. 274, 276–277 (S.D.N.Y.1963) (alternative holding) (Securities Exchange Act of 1934, § 7(c), 15 U.S.C. § 78g(c)); see Remar v. Clayton Secs. Corp., 81 F.Supp. 1014 (D.Mass.1949) (Securities Exchange Act of 1934, § 7(c)). As the Court of Appeals for the Third Circuit said in the Downing case, 162 F.2d at 657:

> "It has been held repeatedly that one whose liability creating conduct is the violation of a statute which makes certain conduct a public offense does not, while engaged in such violation, become an insurer against all harm. The situation is not like that of one who, engaged in a felony, unintentionally causes the death of a human being and is, nevertheless, subject to punishment as a murderer. As Dean Thayer pointed out a number of years ago 'Criminal conduct which had no effect in causing the injury can no more be a ground of liability than noncausative negligence. In either case the wrongdoing is without legal significance as between the parties.' Our statute-breaker is civilly liable only if his law violation causes another harm of the sort which it was the presumed intention of the Legislature to protect against and that injury occurred in a way proscribed by the statute." (Footnotes omitted.)

Two previous decisions in actions brought under § 14(a) emphasize the necessity for causation—that is to say, that the alleged violation of that section of the statute resulted in the damage claimed. In Lapchak v. Sisto, CCH Fed.Sec.L.Rep. ¶ 90,721 (S.D.N.Y.1955), the corporation in which the plaintiff held stock was alleged to have issued shares for inadequate consideration. According to the complaint an increase in the corporation's capital stock was necessary to carry out an alleged scheme to milk the corporation, and the proxy statements issued in connection with the stockholders' meeting for approval of the increase were false and fraudulent under § 14(a). In dismissing the complaint Judge Dimock said "[S]ince plaintiffs concede the absence of insurer liability the claim, to arise under the Act, must have a causal connection with the alleged violation." And Lapchak was not as strong a case for the application of the rule of causation as is the one at bar because the complaint in that case also alleged that the proxies solicited by the means of such statements were necessary for a quorum at the meeting.

Mills v. Sarjem Corp., 133 F.Supp. 753 (D.N.J.1955), involved an alleged scheme by which stockholders in a corporation were induced by fraud to sell their stock to a syndicate seeking to obtain sole ownership of the corporation. As part of the transaction each selling stockholder agreed to give one of the defendants an irrevocable proxy upon the creation of an escrow fund within a fixed period of time. Plaintiffs contended that § 14(a) had been violated because no proxy statement had been given in connection with the agreement. The court held that no proxy statement was necessary under § 14(a) and the SEC rules promulgated pursuant to that section. But the court went on to say at pp. 768–769:

> "Moreover, even if it were found that defendants violated the above provisions of the 1934 Act and the Rules by failing to submit proxy statements, such violation cannot be said to be related in any way to the damages sought to be recovered by

the plaintiffs. The relief for which the plaintiffs prayed is grounded upon fraud and unjust enrichment, which is not in any way connected with the preparation and filing of proxy statements, since there is no requirement that such statements disclose information of the type that plaintiffs allege was wrongfully withheld from them."

See also Dann v. Studebaker-Packard Corp., 288 F.2d 201, 213 (6 Cir. 1961), in which the court assumed that at the most a violation of § 14(a) would raise "jurisdiction in the federal courts to provide a complete remedy for the damages, however remote, that *result* from such violation." (Emphasis added.)

The requirement of a causal connection between the violation of § 14(a) and the claimed injury is also implicit in the principle of "partial invalidity," described by Professor Loss as "essentially sound." 2 Loss, Securities Regulation, 972–73 (2d ed. 1961). This principle simply stated is that when a proxy statement contains fraudulent statements or omissions on a given subject in violation of § 14(a), proxies obtained thereby may nevertheless be voted on corporate questions unrelated to the subject matter of the violation.

In SEC v. Transamerica Corp., 67 F. Supp. 326 (D.Del.1946), modified in other respects, 163 F.2d 511 (3 Cir. 1947), cert. den., 332 U.S. 847, 68 S.Ct. 351, 92 L. Ed. 418 (1948), the alleged violation of § 14(a) was the failure of management to include certain proposals by a minority stockholder in its proxy statement. Since none of these proposals was related to the election of directors, the court held that the proxies might be used for that purpose only, and that the meeting should then be adjourned.

In Textron, Inc. v. American Woolen Co., 122 F.Supp. 305 (D.Mass.1954), the principle was more fully explained. It was there held that misrepresentation as to the candidates for officers and directors for whom the issuer of the proxy statement intended to vote did not invalidate the re-election of management when such re-election would have occurred even if the proxies so obtained had been voted against management. The alleged violation of § 14(a) did not "render the proxies entirely void, or invalidate their authority to attend the meeting and vote on the other matters on which they were instructed." 122 F. Supp. at 308. The court went on to say "[I]n order to invalidate a proxy for fraud, particularly at the request of a third party [minority stockholder] after the meeting, there must be an affirmative showing of the fraud's operative effect." 122 F.Supp. at 309. (Footnote omitted.)

In the case at bar the necessary causal connection between the alleged violation of § 14(a) and the alleged injury to the minority stockholders is wholly lacking. The conclusory allegation that "the acts, conduct and transactions here alleged * * * had the following adverse consequences upon the public shareholders of Wire and Cable" does not cure that defect, even under the assumption that such an allegation would ordinarily be sufficient. It is of course true that allegations of fact are assumed true on a motion under Rule 12 (b) (6). But causation is a question of ultimate fact, and a conclusory allegation on this subject need not be accepted when in irreconcilable conflict with the evidentiary facts alleged in the complaint. 1A Barron & Holtzoff, Federal Practice and Procedure § 350 at 330–31 (Rules ed. Wright 1960); see, e. g., Pauling v. McElroy, 107 U.S.App.D.C. 372, 278 F. 2d 252 (per curiam), cert. den., 364 U.S. 835, 81 S.Ct. 61, 5 L.Ed.2d 60 (1960); Hess v. Petrillo, 259 F.2d 735 (7 Cir. 1958), cert. den., 359 U.S. 954, 79 S.Ct. 743, 3 L.Ed.2d 761 (1959); Ryan v. Scoggin, 245 F.2d 54 (10 Cir. 1957); Sexton v. Barry, 233 F.2d 220 (6 Cir.), cert. den., 352 U.S. 870, 77 S.Ct. 94, 1 L.Ed.2d 76 (1956); Dunn v. Gazzola, 216 F.2d 709 (1 Cir. 1954); 2 Moore, Federal Practice ¶ 12.08 at 2244 (2d ed. 1964); cf. Newport News Shipbuilding & Drv

Dock Co. v. Schauffler, 303 U.S. 54, 58 S.Ct. 466, 82 L.Ed. 646 (1938); Pacific States Box & Basket Co. v. White, 296 U.S. 176, 56 S.Ct. 159, 80 L.Ed. 138 (1935).

In this case the facts alleged concerning Anaconda's stock holdings voted at the December 10 meeting irreconcilably refute the existence of the required causation.

Whether or not the plaintiff has a claim for violation of fiduciary duties or unjust enrichment under state law is beside the point. He has failed to state a claim for relief for violation of § 14(a).

### Section 17(a) of the 1933 Act and Section 10(b) of the 1934 Act.

Plaintiff also urges that he has stated claims under Section 17(a)[3] of the 1933 Act and Section 10(b)[4] of the 1934 Act as implemented by SEC Rule 10b–5,[5] 17 C.F.R. § 240.10b–5. For all practical purposes both 17(a) and 10(b) with its implementing rule cover the same ground with one exception. Section 17(a) deals only with fraudulent practices "in the offer or sale of any securities." Section 10(b) through its implementing Rule 10b–5 deals with such practices in "connection with the purchase or sale of any security." Regardless of the technical forms of the transactions at bar they plainly contemplate a sale of Anaconda stock to Wire and Cable for all of Wire and Cable's assets. Thus, if a claim is stated under § 10(b) of the 1934 Act, one is also stated under § 17(a) of the 1933 Act. The question is whether such a claim is stated in the amended complaint.

The rather muddied state of the law with respect to the elements of a claim under § 10(b) and Rule 10b–5 has been clarified in three recent decisions of the Court of Appeals in this Circuit. List v. Fashion Park, Inc., 340 F.2d 457 (Jan. 4, 1965); O'Neill v. Maytag, supra; Ruckle v. Roto American Corp., supra. In Ruckle stockholders representing more than 50% of the shares entitled to vote at the annual meeting brought a derivative action to enjoin the issuance of 75,000 treasury shares allegedly intended to

3. "It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—
  "(1) to employ any device, scheme, or artifice to defraud, or
  "(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
  "(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

4. "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
      * * * * *
  "(b) To use or employ, in connection with the purchase or sale of any security

registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

5. "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
  "(a) To employ any device, scheme, or artifice to defraud,
  "(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
  "(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
in connection with the purchase or sale of any security."

be resold to the corporation's president or voted as he directed for the purpose of perpetuating corporate control in the current majority directors. The complaint alleged in substance that the corporation had been defrauded into issuing the securities because material facts were withheld by some of the directors from the entire board which approved the transaction. The court held that the complaint stated a valid claim for relief under § 10(b) and Rule 10b–5 on behalf of the corporation as a seller of securities which had been defrauded into issuing the new stock as a result of the deception practiced upon its board of directors.

O'Neill was a derivative action by a minority stockholder of National Airlines against officers and directors of that corporation and Pan American World Airways with whom National had exchanged stock. The plaintiff had not alleged misrepresentation or concealment of any kind, but merely claimed that the stock received by National in the exchange was less in value than that which it gave, and that the transaction was carried out for the purpose of placing the defendant officers and directors in a more favorable position to control National. It was held that although the complaint stated a claim under state law, no claim was stated under Section 10(b) and Rule 10b–5, and that the complaint had therefore been properly dismissed by the district court below. It was said that § 10(b) and Rule 10b–5 required a "claim of deceit, withheld information or misstatement of material fact," 339 F.2d at 767; and that the absence of such allegations was a fatal defect. A mere breach of general fiduciary duties by officers, directors or shareholders actionable under state law did not give rise to a claim under § 10(b), and the section is not "a mandate [for the federal courts] to inquire into every allegation of breach of fiduciary duty respecting the issuance

or sale of corporate securities." The court quoted from Birnbaum v. Newport Steel Corp., supra, as follows:

"[T]hat section [§ 10(b)] was directed solely at that type of misrepresentation or fraudulent practice usually associated with the sale or purchase of securities rather than at fraudulent mismanagement of corporate affairs." 193 F.2d at 464, quoted in 339 F.2d at 768.

The Ruckle case was distinguished on the ground it involved clear allegations of *deception* in the sale of securities.

List v. Fashion Park, Inc., involved a sale of securities to an insider and a claim that the insider had failed to disclose material facts to the seller. The plaintiff seller sued the buyer under § 10(b) and Rule 10b–5, alleging deception by means of the failure to disclose. The court held that even were there material misrepresentations through nondisclosure, nevertheless the plaintiff could not recover under the section and rule since he had failed to establish reliance upon the facts so misrepresented. Reliance upon the misrepresentations alleged was held to be an essential element of a claim under Rule 10b–5. Included in the requirements necessary to bring a case within the purview of § 10(b) is what the court in List describes as that "basic * * * element of tort law *, * * the principle of causation in fact." 340 F.2d at 463.

The rule to be derived from these cases then is that in order to make out a claim under § 10(b) there must be, among other requirements, (1) in connection with the purchase or sale of securities, (2) deception—that is to say fraudulent conduct—by way of affirmative misrepresentation or omission of material facts, (3) that has at least some causal relationship to the damage complained of.[6]

---

**6.** It is not necessary for me to decide whether the causal connection required must rise to the level of proximate cause since no causal connection whatsoever has been alleged here. In Smith v. Bear, 237 F.2d 79, 88, 60 A.L.R.2d 1119 (2 Cir. 1956), the Court of Appeals stated in dictum that when there is a violation of § 10(b) and Rule 10b–5, the injured party may recover "any loss proximately resulting therefrom."

■ Viewed in the light most favorable to plaintiff the amended complaint in the case at bar does not meet these tests. With the exception of alleged omissions and distortions in the proxy statement for the meeting of December 10, 1963, and the related alleged timing of the meeting so as to avoid furnishing year end statements, there is no deception claimed. In order for a valid claim to exist deception alleged must have had some causal relationship to the injury for which redress is sought. Yet the required element of causation is completely lacking here and, indeed, is negatived by facts alleged which are conceded to be true. This has already been fully gone into in the discussion of the claim under Section 14(a) of the 1934 Act. It is unnecessary to repeat that discussion.

Here Anaconda could have consummated the transaction regardless of minority opposition, had it existed, and no internal corporate procedures under Delaware law were available to the minority to block it.[7] The deception alleged in the case at bar neither brought about nor contributed to the damage claimed to have been suffered either by the minority in the representative claim or by the corporation in the derivative claim. This, then, is one of those situations described by the Court of Appeals in O'Neill in which "deception may be immaterial to a breach of duties imposed under common law principles," 339 F.2d at 767, as it is immaterial here.

Moreover, in any event, there is no good reason why a claim based for all practical purposes solely on allegedly deceptive proxy material which is fatally defective for lack of causal connection under § 14(a) should be held to be good under § 10(b) and Rule 10b–5 or § 17(a).

Section 14(a) is specifically designed to deal with deceptive proxy material and consequences flowing therefrom. There is nothing here to justify any contention that § 10(b) and Rule 10b–5 and § 17(a) provide enlarged or different remedies for what are merely violations of § 14(a). Cf. Birnbaum v. Newport Steel Co., supra, 193 F.2d at 464. Indeed, it is still an open question whether fraud in a proxy statement can constitute a violation of § 10(b). See Borak v. J. I. Case Co., 317 F.2d 838 (7 Cir. 1963), aff'd, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964).

■ If any breach occurred of fiduciary obligations which Anaconda, as the controlling stockholder or otherwise, owed to the Wire and Cable minority or to Wire and Cable itself, or any unjust enrichment of Anaconda took place, it was not brought about to any extent through any violations of §§ 14(a) or 10(b) of the 1934 Act or of § 17(a) of the 1933 Act. Redress for breach of such obligations or for unjust enrichment must be sought in the appropriate state forum, and in this case a state proceeding has already been instituted for that very purpose. Absent diversity jurisdiction such claims do not lie in the federal courts.

The motion to dismiss as to defendant Anaconda will therefore be granted.[8]

Since the dismissal as against Anaconda leaves no case or controversy, federal or otherwise, between plaintiff and the nominal defendant Wire and Cable, against which no relief is sought, the amended complaint will also be dismissed as against that defendant sua sponte for want of subject matter jurisdiction.

Judgment will be entered accordingly.

It is so ordered.

---

7. This is quite unlike the situation in Ruckle where plaintiff represented a majority of the shares and in all probability was deprived by the alleged deception of an opportunity to block the transaction by appropriate corporate action.

8. There may be a delicate point as to whether, in the context of this case, dismissal should be for failure to state a claim upon which relief may be granted, Rule 12(b) (6) F.R.C.P., or for want of subject matter jurisdiction, Rule 12(b) (1). See O'Neill v. Maytag, 339 F.2d at 766 n. 3.

However, that has no significance here in terms of result. In either event the amended complaint must be dismissed.