Lincoln ADAIR, on behalf of himself and all other stockholders of North Atlantic Life Insurance Company of America, Plaintiff,

v.

Francis X. SCHNEIDER et al., Defendants.

No. 68 Civ. 314.

United States District Court
S. D. New York.

Dec. 10, 1968.

Lawrence Milberg, New York City, for plaintiff; Lawrence Milberg, Melvyn I. Weiss, New York City, of counsel.

Skadden, Arps, Slate, Meagher & Flom, New York City, for defendants Schneider, Bianco, Coates, Collier, D'Adamo, Friedman, Laidman, William V. Licht, Markert, Pinck, Siegel, Strong, Ward and Werber.

Parr, Doherty, Polk & Sargent, New York City, for defendants Sidney E. Licht, Carron, Cigolini, Degen, Carlino, Great Northern Management Co., Inc., Candlewood Management Corp. and Foundation Fund, Inc.

Rogers, Hoge & Hills, New York City, for defendant Lewis.

Gasperini, Koch & Savage, New York City, for defendant The North Atlantic Life Insurance Co. of America.

WYATT, District Judge.

This is a motion by all defendants named in the complaint except defendants The North Atlantic Life Insurance Company of America, Ticonderoga Holding Co., Inc., Northwestern National Life Insurance Company and individual defendants Dougherty, Pillsbury, Atwood, Jondahl, O'Leary and Christopherson. The motion is expressed in a somewhat tangled fashion but is understood to be for an order dismissing the complaint on its face for lack of jurisdiction over the subject matter (Fed.R.Civ.P. 12(b) (1)) and for failure to state a claim upon which relief can be granted (Fed.R. Civ.P. 12(b) (6)) and, on affidavits, for summary judgment dismissing the action (Fed.R.Civ.P. 56(b)). The motion refers "more specifically" to certain specified "claims" asked to be dismissed; whether this is meant to limit the motion in some way and whether the specified "claims" are all or only part of the claims in the complaint, is not made to appear.

Plaintiff sues as a stockholder of The North Atlantic Life Insurance Company of America ("North"). The action was commenced on January 24, 1968. According to the complaint (para 4(a)), the action is both a class action and a derivative action for the benefit of North. It is evident, however, that whatever claims may be stated in the complaint can only be maintained derivatively for the benefit of North.

■ The complaint openly and defiantly violates Rule 8(a) (2). It is not a "short and plain statement of the claim". It is an extended embroidery of what, if true, would be mere evidence, recited in perplexing and disjointed detail.

Burdensome study of the complaint, however, separates a small amount of wheat from the vast amount of chaff. The claim in the complaint, in summary, is that certain of the defendants violated fiduciary duties owed to North; that they dominated and controlled North; that for their personal benefit they worked out a plan whereby North would issue and sell additional shares to Northwestern National Life Insurance Company ("Northwestern"); that a special meeting of stockholders of North was held on August 14, 1967; that at said meeting the issuance of the additional shares and their sale to Northwestern were authorized by the stockholders of North; that defendants solicited proxies from stockholders by means of a proxy statement which was false and from which many material facts had been omitted; that the additional shares were issued and sold to Northwestern and amounted to a majority of the shares then outstanding; and that the stock was sold to Northwestern "at a favorable price below its actual value". The relief asked is that the issuance of stock to Northwestern "be declared null and void" and that defendants account to and pay to North all profit made by them and all damages suffered by North.

On the face of the complaint, a claim is stated under state law for a violation of fiduciary obligations owed to North. No diversity jurisdiction, however, is claimed. In fact, after notice had been served of the present motion, plaintiff on April 23, 1968 commenced in the New York Supreme Court an action similar to that at bar.

Jurisdiction is rested (complaint, para 1) on four sections of the Securities Exchange Act of 1934 (15 U.S.C. § 78a and following; the "1934 Act"), namely,

Section 10(b) (15 U.S.C. § 78j(b)), Section 12(e) (15 U.S.C. § 78l(e)), Section 14 (15 U.S.C. § 78n), and Section 25 (15 U.S.C. § 78y).

Three of these sections may be eliminated at the outset as inapplicable.

Section 12(e)

Section 12(e) by its terms expired July 1, 1935.

Section 14

Section 14 requires that any solicitation of proxies must be in accordance with rules prescribed by the Securities and Exchange Commission (the "Commission"). The Commission has prescribed, among others, Rule 14a–9 (17 C.F.R. § 240–14a–9) which in substance forbids in any proxy statement anything false or misleading as to a material fact and any omission of any material fact.

■ Originally, the proxy provisions of Section 14 of the 1934 Act and various other provisions applied only to securities registered on a national securities exchange. The stock of North is not registered on a national securities exchange. By amendments enacted in 1964, however, the proxy and other provisions were extended to securities traded over-the-counter where the issuer was of a certain size and had a certain number of shareholders. At the urging of State Insurance Commissioners and stock insurance companies, Congress exempted securities of insurance companies from the proxy and other provisions of the 1934 Act provided certain conditions of state regulation were present. See 1964 U.S.Cong. & Adm.News, p. 3013 and following. The exemption is found in 15 U.S.C. § 78l(g) (2) (G). It is established to my satisfaction, and not seriously contested by plaintiff, that the necessary conditions of state regulation are here present and that solicitation of proxies for North stock is exempt from the provisions of the 1934 Act.

Section 25

■ This section (15 U.S.C. § 78y) deals with "Court review of orders" made by the Commission and provides for such review by a Court of Appeals. It has no application whatever to the case at bar.

This leaves one section of the 1934 Act as a possible basis for jurisdiction in this Court.

Section 10(b)

This section (15 U.S.C. § 78j(b)) forbids the use "in connection with the purchase or sale of any security * * * any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe * * *".

The Commission has prescribed, among others, Rule 10b–5 (17 C.F.R. § 240.10b–5) which, in essence, makes unlawful deceptive conduct "in connection with the purchase or sale of any security".

■ There is no doubt but that the sale of its own shares by North to Northwestern was a "sale" within the meaning of Rule 10b–5. Ruckle v. Roto American Corp., 339 F.2d 24, 27 (2d Cir. 1964).

The deceptive conduct charged in the complaint at bar was the use of a false and misleading proxy statement to solicit proxies of North stockholders for a special meeting of stockholders held August 14, 1967. In a memorandum for plaintiff it is urged that the complaint alleges "a whole series of manipulative acts" other than the proxy statement but I do not so read the complaint.

The deceptive conduct of the proxy statement is averred as part of the scheme to cause North to amend its certificate of incorporation to increase the number of its authorized shares so as to permit the sale of the majority shares to Northwestern.

The special meeting of stockholders of North so to amend the certificate of incorporation was held on August 14, 1967. The proxy statement was used in this connection and for purposes of the present motion it is assumed that the proxy statement was false and misleading.

It has already been explained that federal law as to proxy statements (Section

14(a) of the 1934 Act) is not applicable here because North is an insurance company regulated by New York law. Doubtless a state law claim in this respect is stated but not a federal one.

Whether deceptive conduct by means of a proxy statement exempt from Section 14(a) can nevertheless give rise to a claim under Section 10(b) is highly debatable, if not doubtful. Borak v. J. I. Case Co., 317 F.2d 838, 847 (7th Cir. 1963), affirmed 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); Richland v. Crandall, 262 F.Supp. 538, 552–553 (S.D.N.Y.1967); Barnett v. Anaconda Co., 238 F.Supp. 766, 776 (S.D.N.Y. 1965).

■ Even if Section 10(b) and Rule 10b–5 are applicable to a proxy statement exempt from Section 14(a), no violation of Section 10(b) could here be found because the deceptive conduct caused no damage to North.

The "principle of causation in fact" is part of Rule 10b–5 and as a "basic * * element of tort law" cannot be read out of that Rule. List v. Fashion Park, Inc., 340 F.2d 457, 463 (2d Cir. 1965). Thus the plaintiff must establish that the deceptive conduct was the cause of the damage; in the case at bar, that North "would have been influenced to act differently" than North did act, except for the deceptive conduct (340 F.2d at 463).

The corporate action with respect to which the proxy statement was used was the amendment of the certificate of incorporation of North. Such amendment required the vote of a majority of the shares, no more. New York Business Corporation Law, McKinney's Consol. Laws, c. 4, § 803.

The affidavits and exhibits satisfy me that defendants themselves owned and controlled a majority of the outstanding shares of North. There is no genuine issue as to this material fact.

Thus, the allegedly deceptive proxy statement did not cause any damage to North because the amendment to the certificate of incorporation could have

been, and would have been, brought about by defendants if there had never been a deceptive proxy statement. The "deception" was "immaterial to a breach of duties imposed under common law principles". O'Neill v. Maytag, 339 F.2d 764, 767 (2d Cir. 1964).

The case at bar cannot be distinguished from Barnett v. Anaconda Co., 238 F.Supp. 766 (S.D.N.Y.1965) which seems to me to have been correctly decided by Judge Bryan. A decision of Judge Dooling, Laurenzano v. Einbender, 264 F.Supp. 356 (E.D.N.Y.1966), has some differences from the case at bar in that Section 14(a) was applicable, the shares being listed on a national securities exchange. Laurenzano may be read, however, as reaching a result contrary to Barnett. If so, I prefer the reasoning and the result of Barnett. It must be remembered that the question is not whether deceptive conduct can give rise to a claim, but rather whether the proper forum in this instance is a state court or a federal court. I do not believe that the claim here is based on any violation of federal law.

The motion for summary judgment in favor of movants must be granted. The plaintiff has asked for leave to amend his complaint "to state a 10b–5 class action". Leave to amend is, of course, freely given, and if this were simply a question of pleading leave would be given here; indeed, plaintiff may have a right to amend since no responsive pleading has been served. Fed.R.Civ.P. 15(a).

There must be judgment, however, for movants. Such an amendment as plaintiff suggests would not cure the defect. The damage to individual North stockholders as members of a class would no more be caused by the allegedly deceptive proxy statement than damage to North itself.

The motion for summary judgment is granted. Settle judgment not later than December 17, 1968, including the appropriate determination and direction under Fed.R.Civ.P. 54(b).