**Ronald LOEB, Plaintiff,**

v.

**WHITTAKER CORPORATION et al.,**
**Defendants.**

**No. 71 Civ. 1766.**

United States District Court,
S. D. New York.

Nov. 4, 1971.

Rubin, Wachtel, Baum & Levin, New York City, for plaintiff, by Martin A. Coleman, Stephen A. Marshall, New York City, of counsel.

Hawkins, Delafield & Wood, New York City, for defendants other than Yardney Electric Corporation, by Clarence Fried, Philip R. Forlenza, New York City, of counsel.

Edward F. Rosiny, New York City, for defendant Yardney Electric Corp.

GURFEIN, District Judge.

This is a motion by the defendants for an order (a) dismissing the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, or declining jurisdiction, or in the alternative (b) staying the action; or (c) transferring it to the Central District of California. They also move to require a more definite complaint.

## THE COMPLAINT AND THE COMPANION STATE ACTION

Plaintiff is a shareholder of Yardney Electric Corporation (Yardney) and brings this action derivatively on behalf of Yardney against Whittaker Corporation (Whittaker), William R. Whittaker (W. R. Whittaker), who is Whittaker's Chairman and controlling stockholder as well as a director of Yardney, and the other individual defendants who are all directors of Yardney.

The operative facts alleged in the complaint are as follows: In May 1970 Whittaker owned 1,315,834 shares or approximately 56% of Yardney's outstanding common stock. On May 28, 1970 Yardney was caused by the other defendants to enter into an agreement with Whittaker whereby Yardney was obligated to deliver to Whittaker

3,020,831 theretofore unissued shares of Yardney common stock, which would give Whittaker 80% of the company, in exchange for certain net assets of Whittaker Power Systems Corporation (WPSC), a wholly owned subsidiary of Whittaker. It is alleged that the market value of the Yardney shares to be issued was in excess of $14,700,000 on May 28, 1970 and that the net assets of WPSC had a book value of only $3,285,000, a far lesser going concern value, and produced either very low earnings or a loss in the accounting periods immediately preceding the agreement. The complaint alleges that the issuance of the Yardney stock was for a grossly inadequate consideration and was the result of a scheme or plan designed for the advantage of Whittaker and W. R. Whittaker with the knowledge, consent, acquiescence and participation of the other individual defendants at the expense of Yardney and its shareholders other than Whittaker.

To accomplish the purpose of this scheme and plan, the defendants caused Yardney to issue to its shareholders a proxy statement which plaintiff alleges to be false and misleading in certain material respects, including, among others: (1) the true purpose of "unloading" an ailing subsidiary upon Yardney at a grossly inflated price in a tax-free transfer was concealed; (2) the statement that it would be efficient and in the best interests of Yardney to acquire the business of WPSC was false; (3) there was failure to disclose (a) that the interests of Yardney were of "no moment" in the discussions; (b) that Whittaker and the individual defendants were aware that certain internal reports respecting WPSC indicated that its losses were due to fundamental and continuing problems and deficiencies which would cause its losses to continue; (c) that the cost of the assets transferred was substantially less than the value of the Yardney shares given in exchange; (d) that the value of these assets was declining in value; and (e) that tax

considerations of Whittaker were determinative in reaching the agreement.

Another aspect of the concealment in the proxy statement alleged was disclosure of the provision in the agreement that the votes of the Yardney family, the former owners of Yardney who still owned 9.4% of its outstanding shares, would not be counted, without a further disclosure that the Yardney family were being disenfranchised because it was known they would vote *against* the agreement.

The complaint discloses that the issuance of Yardney stock was conditioned upon "the affirmative vote of the holders of a majority of the shares voted at the special meeting of stockholders, other than the 1,315,834 shares owned by Whittaker (representing approximately 56% of the outstanding shares) and the 220,320 shares owned by Michael N. Yardney and members of his immediate family (representing approximately 9.4% of the outstanding shares). The required approval cannot be waived by either party to the agreement."

The exchange of assets for Yardney stock was approved by a vote of 1,714,327 to 255,006; eliminating Whittaker's shares the vote was 398,493 "for" and 255,006 "against"; and eliminating both Whittaker's and the Yardney family's shares the vote was 398,493 "for" and 34,686 "against."

The complaint alleges that Section 17(a) of the Securities Act of 1933 and Sections 10(b) and 14(a) of the Securities Exchange Act of 1934 as well as the rules and regulations promulgated thereunder have been violated. Plaintiff prays for damages approximating $11,000,000 and for the establishment of a trust of the Yardney shares in the hands of Whittaker and an accounting therefor.

## THE STATE COURT ACTION

In September 1970, approximately seven months before this action, plaintiff brought a derivative action in the Su-

preme Court of New York based upon the same transactions. The State action alleges corporate waste, conversion and breach of fiduciary duty.

## THE MOTIONS TO DISMISS AND TO DECLINE JURISDICTION

█ The defendants contend that no claim for relief is stated under the Securities Laws. They concede, however, that Section 10(b) of the 1934 Act (and Rule 10b-5 thereunder) covers alleged misrepresentations in a proxy statement; and that presumably such misrepresentations also may give rise to a claim under Section 14(a), the proxy statement section. This concession is, of course, compelled by the decision of the Supreme Court in Securities and Exchange Commission v. National Securities, Inc., 393 U.S. 453, 468, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969). It is not easy to see what different elements of proof would be required to show a violation of Section 10(b) rather than of Section 14(a), cf. Gould v. American Hawaiian S.S. Co., 319 F.Supp. 795, 801–802 (D.Del.1970). But cf. Swanson v. American Consumer Industries, 415 F.2d 1326, 1331–1332 (7 Cir. 1969). But plaintiff is entitled to claim under both sections. The defendants concentrate their fire, however, on two propositions, the first alleged to be applicable to both the Section 10(b) and the Section 14(a) claim, the second only to the 14(a) claim. These propositions are: (1) that there is no causal relationship between the alleged deceit and the damages claimed; and (2) that the complaint fails adequately to allege that the statements are false and misleading with respect to any material facts or that material facts were omitted.

██ For the causation defense the defendants rely principally upon Barnett v. Anaconda Co., 238 F.Supp. 766, 770 (S.D.N.Y.1965). The Court there held that where the controlling stockholder had enough votes to ratify the plan, misleading statements in the proxy material were necessarily immaterial to the result and, hence, could cause no damage. There is some debate, see, e. g., Swanson

v. American Consumers Industries, 415 F.2d 1326, 1332 n. 6 (7 Cir. 1969), on whether the *Barnett* analysis has not been overruled in this Circuit by Schoenbaum v. Firstbrook, 405 F.2d 215 (2 Cir. 1968, *en banc*). But the facts at bar require no such determination. In *Barnett* it was assumed that the result could not, mathematically, be affected by the votes of the minority shareholders. In this case, however, there is alleged a specific agreement to abide by the vote of the minority shareholders under which agreement "[t]he required approval cannot be waived by either party." This makes the vote of the minority as effective as if a statute permitted it to control. To mislead the minority in such a posture of events is directly to affect the result with attendant injury to the corporation. See Eagle v. Horvath, 241 F.Supp. 341, 343–344 (S.D.N.Y.1965); Globus, Inc. v. Jaroff, 271 F. Supp. 378, 381 (S.D.N.Y.1967). See also Mills v. Electric Auto-Lite, 396 U.S. 375, 385 n. 7, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). If that were not so, a dominant stockholder, fearful of casting his own conclusive vote in a self-dealing situation, could commit the matter to the minority with false information given and material information withheld. That he could be brought to book in a State Court for such conduct is not the answer. For the transaction has every element required for a Federal cause of action. The issuance of the shares is in connection with the purchase and sale of a security, Schoenbaum v. Firstbrook, *supra*; Hooper v. Mountain States Securities Corp., 282 F.2d 195 (5 Cir. 1960), and the falsity, if material, may be said to have caused the damage. Mills v. Electric Auto-Lite Co., *supra*.

█ The further attack on the Section 14(a) claim is groundless and, in any event, premature. We have been taught by our Court of Appeals that "summary judgment [here a motion to dismiss] should rarely be granted against a plaintiff in a stockholder's derivative action especially when the plaintiff has not had an opportunity to resort to discovery procedures." *Schoenbaum,*

*supra,* 405 F.2d at p. 218. That was written in the context of a claim that a controlling shareholder used its control to acquire shares of a controlled corporation at a vastly inadequate price, failing to disclose the true value of the shares acquired. This case is the converse. Here it is claimed that the controlling shareholder used its control to sell assets to a controlled corporation for a vastly excessive price, failing to disclose its own knowledge of the true value of the assets given in exchange for the stock of the controlled corporation. The guiding rule is the same in either case. Moreover, this is not a case where the *unfairness* of the transaction is its essence. Cf. Laurenzano v. Einbender, 264 F.Supp. 356 (S.D.N.Y.1966). In this case the purported *concealment* of known true value is its essence. That is a matter for Federal cognizance, and the complaint is sufficient against the motion to dismiss.[1]

With respect to the 17(a) claim under the 1933 Securities Act the plaintiff now concedes that he fails to state a claim because the complaint only alleges fraud in connection with the purchase and not the sale of securities.

## MOTION TO TRANSFER OR FOR A STAY

▇▇▇▇ The defendants move for transfer of the action to the Central District of California (Los Angeles) pursuant to 28 U.S.C. § 1404(a). It is agreed that the action could have been brought there. They move, in the alternative, for a stay of the Federal action.

Although the plaintiff's choice of a forum may not be lightly disturbed (Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508,

67 S.Ct. 839, 91 L.Ed. 1055 (1947)), the defendants have made a compelling argument for transfer.[2]

The suit is a derivative suit on behalf of the Yardney Corporation, a New York corporation which at the time of the transactions was doing business in New York. The plaintiff is a New Jersey resident who works in New York. There is no suggestion that he will be a witness nor has the plaintiff come forward with the names of any New York City or adjacent area witnesses. Nor are any documents of possible relevance located in New York. The plaintiff's case will presumably be made from books and records in the possession of Yardney and the several defendants as well as by examination of the defendants, their accountants and investment advisers. All these persons reside in California. All these books and records are in California.

The transaction in suit involves, as we have seen, a claim that a false proxy statement caused the approval of the transfer of its own shares by Yardney to Whittaker for a grossly inadequate consideration. The falsity lies, *inter alia,* in the concealment of inside reports showing that the condition of the going concern being bought with these shares was worsening. The basic issues will, of necessity, concern financial data, their accuracy or inadequacy and the knowledge of the defendants who allegedly fabricated the proxy statement by omission or commission. This kind of issue is better resolved by oral testimony at a trial than by the cold printed pages of long and often dreary depositions. While I am skeptical of the suggestion by the defendants that they may not be able to bring to New York their account-

---

1. In view of the finding of adequacy of the complaint in general, it is unnecessary to consider whether certain of the allegations, such as concealment of breach of fiduciary duty, pass muster on their own as violations of Section 14(a). Cf. Crane Co. v. Westinghouse Air Brake Co., 419 F.2d 787 (2 Cir. 1969); Stedman v. Storer, 308 F.Supp. 881, 887 (S.D.N.Y. 1969).

2. The Court is intentionally sparing of citations, being mindful of two things: (1) that every District Court decision in this area depends on congeries of facts, the precise language used rarely being strictly relevant to decision in a different case; and (2) that the repetition of what are by now simply truisms, accompanied by string citations, is of little use except as a reward for the diligence of law clerks.

ants and investment advisers who must, for their own vindication, testify on the issues, it is, nevertheless, likely that they will be more readily available in California than in New York.

The transaction of which complaint is made occurred in essential part in California. There the proxy statement was prepared and the investment advice on the adequacy of price given. There the board of directors meeting was held which approved the agreement for submission to the shareholders. There the inside reports mentioned were written and circulated.

The plaintiff does not challenge these facts but argues that an order of transfer should nevertheless be refused. He argues that there is pending in the New York courts a companion case arising out of the same transaction. He points out that this Court cannot stop the New York case from proceeding and that the defendants will have to come to New York in any event. He is willing to lighten their burden by agreeing to common discovery in the New York and in the Federal actions, and, further, with respect to documents, to accept copies in lieu of originals. As circumstances evidencing contacts with New York, he notes that (1) Yardney is a New York corporation and had its principal office here during the events in suit; (2) although the proxy statement was prepared and the directors meeting respecting it held in California, the special stockholders meeting which most of the defendants attended, as well as the actual closing, occurred in New York. He also states that the transfer agent and registrar of Yardney are in New York.

There is thus a showing that the proximate result of the alleged deceit was the shareholders' vote in New York and that the nominal defendant Yardney had its headquarters here at the time. It cannot be said, therefore, that the Southern District was chosen as the forum in order to harass the defendants. On the other hand, no relevant book or material witness is here. If the New York suit were not in existence there could hardly be any question that the balance of convenience favors transfer. But the New York suit is alive; common discovery is agreed to; arrangements for photocopies are assured. And of course, some weight must be given to the plaintiff's choice of forum even in a derivative suit.

The strongest argument presented by the plaintiff is that trying two cases involving the same transaction on opposite sides of the continent would impose an intolerable economic burden on him. That may well be the fact, but the argument is based on the assumption that there is an inherent right to sue on the same transaction in two courts at the same time. One might have supposed that when the Congress granted exclusive jurisdiction to the Federal courts in the Securities Exchange Act of 1934, knowing that often common law fraud and breach of State fiduciary duty arise out of the same unlawful transaction, it was knowingly providing for a dual jurisdiction. But in this Circuit we have come to learn that "a litigant is entitled to his day in one court, but not in two." Rosenfeld v. Black, 445 F.2d 1337, 1341 n. 5 (2 Cir. 1971). And even in a nondiversity case where Federal jurisdiction was exclusive this Circuit has upheld the stay of the Federal action while the State Court action was pending. Klein v. Walston & Co., 432 F.2d 936 (2 Cir. 1970); and see Mottolese v. Kaufman, 176 F.2d 301 (2 Cir. 1947). The District Court has been urged to use its power freely to stay the Federal action unless the State action is discontinued.

■ A stay is not required here, however. The complaint is not a mirror image of the State Court complaint, as is sometimes the case. The claims of corporate waste, conversion and breach of fiduciary duty are not brought into the Federal case on the theory of pendent jurisdiction. The New York action was started seven months earlier. There is, to be sure, an area where collateral estoppel may serve to narrow the issues in the second case to be tried even though the rule of *res judicata* would not apply.

See Abramson v. Pennwood Investment Corp., 392 F.2d 759 (2 Cir. 1968). In the circumstances, the Court does not believe that the drastic remedy of stay as suggested by Chief Judge Friendly in the *Rosenfeld* case should be applied. The doctrine expounded does have specific application, however, to the weighing of equities on a motion to transfer. Since the balance of convenience here is so strongly in favor of the defendants, the argument that the pendency of the New York action should make ,it easier for the plaintiff to take two bites at the cherry is not compelling.

The plaintiff can still conduct his pre-trial procedure in the New York case, presumably in New York. That circumstance should lead to some agreement for common discovery.

The motion to dismiss the complaint is denied.

The motion to require a more definite complaint is denied without prejudice.

The motion for a stay or to decline jurisdiction is denied.

The motion to transfer to the Central District of California under 28 U.S.C. § 1404(a) is granted.