**Michael COHEN, Plaintiff,**

**v.**

**Charles H. COLVIN et al., Defendants.**

**No. 66 Civ. 197.**

United States District Court
S. D. New York.

March 15, 1967.

Louis Kipnis, New York City, for plaintiff.

Cleary, Gottlieb, Steen & Hamilton, New York City, William L. Lynch, Geo. Weisz, Allan R. Tessler, New York City, of counsel, for individual defendants.

Gasperini, Koch & Savage, New York City, for corporation defendant.

## MEMORANDUM

TENNEY, District Judge.

Certain named defendants move pursuant to Rules 12(b) (1) and (6) of the Federal Rules of Civil Procedure for dismissal of plaintiff's complaint for lack of jurisdiction and for failure to state a claim upon which relief can be granted.[1]

Plaintiff, a stockholder of the Fairchild Hiller Corporation (hereinafter referred to as "Fairchild"), brings this action individually and on behalf of all stockholders similarly situated, and on behalf of Fairchild, claiming a violation by the defendants of Sections 10(b) and 14(a) of the Securities Exchange Act of 1934 (48 Stat. 891 (1934), 15 U.S.C. § 78j (1964); 78 Stat. 569 (1964), as amended, 15 U.S.C. § 78n (1964)), and Rules 10b–5 and 14a–9 promulgated pursuant thereto (17 C.F.R. §§ 240.10b–5, 240.14a–9). Plaintiff invokes the jurisdiction of this Court solely under Section 27 of the Securities Exchange Act (48 Stat. 902 (1934), 15 U.S.C. § 78aa (1964)).

Plaintiff's complaint alleges that Fairchild is a Maryland corporation doing business in New York with its shares be-

---

1. Rule 12(b) of the Federal Rules of Civil Procedure provides that where a motion is made to dismiss for failure to state a claim upon which relief can be granted, and matters outside the pleadings have been presented to and have not been excluded by the Court, the motion shall be treated as provided for in Rule 56 (Summary Judgment) with all parties being given the reasonable opportunity to submit all material pertinent to a Rule 56 motion. Affidavits have been submitted by the defendants and have been considered by me, and plaintiff has been given ample opportunity to submit affidavits in his behalf.

ing traded on the New York Stock Exchange. Paragraph 5 of the complaint states that on June 30, 1965, Fairchild was authorized to issue 5,000,000 shares of common stock. Of this amount, approximately 3,000,000 shares were outstanding with a so-called "Insider Group" of directors holding approximately 10% of the outstanding shares, giving this group "effective working control" of Fairchild. Paragraph 6 alleges that the "Insider Group" dominated the management policies of Fairchild and controlled the board of directors. Paragraph 7 realleges the control of the "Insider Group" and states that this group can perpetuate itself through the proxy machinery of the corporation.

Paragraphs 8 and 9 contain the crux of plaintiff's claim that Section 10(b) and Rule 10b–5 have been violated. It is there recited that commencing in 1964, Fairchild decided to acquire shares of Republic Aviation Corporation (hereinafter referred to as "Republic") for the purpose of effecting a future amalgamation of the two companies. This decision was not made public. Plaintiff contends that the amalgamation would require Fairchild to sell 1,500,000 new shares of stock at a value of $15,000,000. It is further alleged that the defendants were duty bound not to compete with Fairchild in the acquisition of Republic shares and were prohibited from using this confidential information for their own benefit or disclosing it to others.

Paragraph 10 states that in 1964 Fairchild acquired 257,000 shares of Republic stock at a cost of approximately $3,690,000. At the same time that Fairchild was obtaining these shares, plaintiff contends that the defendants and their associates purchased 170,000 shares of Republic. The complaint alleges that Fairchild had sufficient resources to purchase the shares acquired by the defendants.

By reason of the Fairchild holdings in Republic, two of Fairchild's directors (two of the named defendants) became directors of Republic. These directors worked toward obtaining a purchase

agreement and such agreement was reached on August 10, 1965. The agreement provided for the sale of selected Republic assets to Fairchild, with Fairchild to pay a certain amount of cash at the closing; in addition, Fairchild was to issue to Republic a one-half share of Fairchild common stock for each outstanding share of Republic. Plaintiff claims that Republic was obliged to ultimately distribute these shares to its shareholders, while defendants claim that this was only one of several alternatives available to Republic.

It is further alleged that 1,500,000 Fairchild shares were issued to Republic, which intended to distribute said shares to its stockholders, including Fairchild and the defendants, who were to be treated in the same manner as any other stockholder. It is plaintiff's contention that in this manner defendants were to acquire 85,000 shares of Fairchild stock which plaintiff claims have a market value of at least $850,000. According to plaintiff, the acquisition of Fairchild shares through Republic constituted a purchase by the defendants of Fairchild shares from Fairchild, and that defendants' actions in obtaining these shares amounted to violations of Section 10(b) and Rule 10b–5.

Plaintiff further alleges that the defendants prepared and circulated to the Fairchild shareholders a notice of special meeting, proxy statement and proxy, authorizing the persons named therein to vote in favor of the proposed acquisition of Republic assets. Plaintiff claims that said proxy statement was false and misleading in that it omitted certain material facts about the role of the defendants in the acquisition and that such omissions constituted violations of Section 14(a) and Rule 14a–9. The various claimed omissions will be fully set forth below.

Finally, plaintiff's complaint adds a cause of action under state law for defendants' violation of their fiduciary duties to the corporation. Plaintiff invokes the doctrine of pendent jurisdiction in order to sustain the Court's ju-

risdiction to determine this cause of action.

Section 10(b)[2] of the Securities Exchange Act and Rule 10b–5[3] promulgated thereunder attempt to prohibit the use of certain manipulative or deceptive devices in connection with the purchase or sale of securities. In order to state a cause of action under these provisions, certain essential elements must be set forth in plaintiff's complaint. See Barnett v. Anaconda Co., 238 F.Supp. 766, 775 (S.D.N.Y.1965). After careful consideration, I have concluded that certain of these essential elements are missing, and, hence, plaintiff's cause of action under these provisions must be dismissed.

 To begin with, these provisions require the plaintiff to be either a purchaser or a seller of a security. As stated by the Court in Birnbaum v. Newport Steel Corp., 193 F.2d 461, 464 (2d Cir.), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952):

> [S]ection 10(b) * * * was directed solely at that type of misrepresentation or fraudulent practice usually associated with the sale or purchase of securities rather than at fraudulent mismanagement of corpo-

rate affairs, and that Rule X–10B–5 extended protection only to the defrauded purchaser or seller.

 It is now clear that a corporation as a purchaser or seller of stock may assert a claim under Section 10(b) and Rule 10b–5. New Park Mining Co. v. Cranmer, 225 F.Supp. 261 (S.D.N.Y. 1963); Pettit v. American Stock Exch., 217 F.Supp. 21 (S.D.N.Y.1963). But a third person cannot assert claims based upon purchases or sales to which he was not a party. Birnbaum v. Newport Steel Corp., supra; New Park Mining Co. v. Cranmer, supra. In this case, Fairchild did not sell any of its stock to the defendant directors. Fairchild's only "sale"[4] of stock was the transfer of 1,500,000 Fairchild shares to Republic pursuant to the amalgamation agreement between the two corporations. Pursuant to this agreement, Republic was given several options: (1) selling the 1,-500,000 newly-acquired Fairchild shares to selected purchasers; (2) making a public distribution of said shares; and (3) distributing said shares to existing shareholders (including the defendant directors). (See exhibit B to Uhl affidavit at 27.) It would be straining logic for this Court to hold that Fairchild "sold" its stock to the defendants be-

2. 48 Stat. 891 (1934), 15 U.S.C. § 78j (1964) provides as follows:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

3. 17 C.F.R. § 240.10b–5 provides as follows:

Employment of manipulative and deceptive devices.

It shall be unlawful for any person, directly or indirectly, by the use of any

means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(A) To employ any device, scheme, or artifice to defraud,

(B) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(C) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

4. See Ruckle v. Roto Am. Corp., 339 F.2d 24 (2d Cir. 1964).

cause Republic chose the third alternative and thereby the Fairchild stock eventually found its way into the hands of the defendants.

■ Similarly, Fairchild never purchased any shares of stock from the defendants. The only relevant purchase made by Fairchild was its purchase of 257,000 shares of Republic stock, and this purchase in no way involved the defendants. The defendants did make a stock purchase, but this purchase was of Republic shares, not Fairchild shares. Once again, it would be going quite far to state that the defendants "purchased" stock from Fairchild when they purchased Republic shares because the defendants' shares of Republic were later exchanged for shares of Fairchild pursuant to the amalgamation agreement.

In this connection, it should be noted that at the time the defendants purchased Republic stock, they could neither be sure that any amalgamation would take place nor could they have possibly known of the issuance of Fairchild shares to Republic stockholders as part of any amalgamation. The uncontested affidavit of Edward Uhl, President of Fairchild, makes it clear that the defendants' purchases of Republic stock were made months prior to the formulation of the plan of amalgamation which was finally adopted, and the manner in which Republic would distribute its newly-acquired Fairchild shares was not decided upon until long after the defendants purchased their Republic stock. Under such circumstances, the purchase by the defendants of Republic stock looked more like a risky business venture on their part rather than a calculated plan by the defendants to make unfair use of inside information and thus appropriate to themselves the benefits of the proposed amalgamation. A recent law review article discussing Section 10(b) has stated

"[I]f the board of directors of two companies have agreed in principle to a merger on specified terms, certainly insiders should thereafter be precluded from trading. On the other hand, where negotiations have just commenced and the parties have established no operating guidelines, such as a favorable rate of exchange for the stock of one company, it can be argued that insiders should still be able to trade. Under these circumstances, the insider is not in possession of any information which clearly places him in a position superior to that of the average investor, and he would seem to be incurring the normal market risks." Fleischer, Securities Trading and Corporate Information Practices: The Implications of the Texas Gulf Sulphur Proceedings, 51 Va.L.Rev. 1271, 1290 (1965).

■ In addition, to maintain an action under Section 10(b), it is not sufficient to allege a breach of general fiduciary duties where the breach does not involve deception. O'Neill v. Maytag, 339 F.2d 764 (2d Cir. 1964). Stated in other terms, in order to proceed under this section there must be an allegation of fraud, Hoover v. Allen, 241 F.Supp. 213 (S.D.N.Y.1965); Barnett v. Anaconda Co., supra, since Section 10(b) is aimed at fraudulent conduct in connection with the purchase or sale of a security. Pettit v. American Stock Exch., supra.

In the context of this case, the Court fails to see how plaintiff could possibly prove that any fraud or deception was practiced on Fairchild. Plaintiff's complaint merely contains several conclusory allegations of fraud and deceit, but fails to set forth any actions by the defendants which could possibly be called fraudulent or deceitful.

Plaintiff places great reliance on Ruckle v. Roto Am. Corp., 339 F.2d 24 (2d Cir. 1964), wherein the Court upheld an action under Section 10(b) where the complaint alleged that the defendant directors caused the corporation to issue stock to themselves by withholding pertinent information from other members of the board of directors. In the instant case, there was no withholding of any information by the defendant directors from the corporation. Both at the board of directors' meeting of Janu-

ary 16, 1964, and in the proxy statement of September 1, 1965 (to be discussed more fully hereinafter), there was full disclosure that the defendants were embarking upon a large-scale purchase of Republic securities. Rather than concealing such information, the defendants were quite open about the plan, and were, in fact, encouraged by other members of the board of directors.

Finally, in order to sustain an action under Section 10(b), a plaintiff must allege that he was damaged as a result of the actions of the defendants. See Hoover v. Allen, supra. In this case, plaintiff has failed to allege any causal connection between the alleged fraud perpetrated by the defendants and the "damages" suffered by Fairchild. See List v. Fashion Park, Inc., 340 F.2d 457 (2d Cir.), cert. denied, 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965); Barnett v. Anaconda Co., supra.

Here, all indications point to the fact that rather than sustaining damages, the corporation benefited from the actions of the defendants. As is made clear in the minutes of the directors' meeting of January 16, 1964, the entire board encouraged the defendants to embark on a program of purchasing Republic stock. There were two important reasons for such encouragement: (1) Fairchild itself did not have sufficient assets available to undertake the acquisition of Republic alone;[5] (2) it would be detrimental for Fairchild to purchase more that 10 per, cent of Republic since Fairchild would then be required to register as an "insider" under the Securities Exchange Act, and hence it would be impossible to maintain the confidentiality upon which the success of any proposed amalgamation would depend. (See exhibit A to Uhl affidavit at 2, 3.) Under these circumstances, the Court fails to see how Fairchild was damaged as a result of purchases of Republic stock by the defendants.

In conclusion, the Court is of the opinion that plaintiff's complaint fails to state a cause of action under Section 10(b) of the Securities Exchange Act, but, at best, spells out a common law action for usurpation of a corporate opportunity. Since no claim under the Securities Exchange Act is stated where a complaint merely alleges a breach of a common law fiduciary duty owed by directors to their corporation, plaintiff's cause of action under Section 10(b) and Rule 10b–5 must be dismissed.

Section 14(a)[6] of the Securities Exchange Act and Rule 14a–9[7]

---

5. The Court need not accept the allegation in plaintiff's complaint that Fairchild did have sufficient assets available to undertake the purchase of Republic shares alone, since plaintiff has failed to comply with Rule 56(e). This Rule states that the adverse party may not rest upon mere allegations of his pleadings, but must submit affidavits setting forth specific facts showing there is a genuine issue for trial.

6. 78 Stat. 569 (1964), as amended, 15 U.S. C. § 78n (1964). This Section provides as follows:

(a) It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title.

7. 17 C.F.R. § 240.14a–9 provides as follows:

False or misleading statements.

No solicitation subject to * * * [this regulation] shall be made by means of any proxy statement, form of proxy, notice of meeting, or other communication written or oral containing any statement which at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

attempt to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitations. J. I. Case Co. v. Borak, 377 U.S. 426, 431, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). In order to state a cause of action under Section 14(a) and Rule 14a–9, the challenged proxy statement must be shown to be false and misleading with respect to any material fact or must omit to state any material fact necessary to make the proxy statement not false and misleading. After a careful reading of the Fairchild proxy statement of September 1, 1965, I find no violations of Section 14(a) and Rule 14a–9, and hence plaintiff's cause of action under these provisions must be dismissed.

Plaintiff's complaint alleges that the Fairchild proxy statement contained six omissions of material facts, and an additional paper submitted by plaintiff entitled "answering affidavit" alleges three additional omissions.

1. Plaintiff claims that no mention was made of the fact that the defendants would receive 85,000 shares of Fairchild upon the completion of the amalgamation. However, the proxy statement clearly sets forth that the defendant directors held 170,000 Republic shares and that if the amalgamation were approved, all Republic shareholders (including the defendants) would receive one-half share of Fairchild stock for each share of Republic they held.

2. Plaintiff also claims that the statement omitted to inform the shareholders that the defendant directors participated in the decision to have Fairchild acquire Republic. However, it would seem totally unnecessary to inform Fairchild shareholders that members of its board of directors participated in the decision to acquire Republic. This is precisely the type of decision which the shareholders of a corporation entrust to the directors.

3. Plaintiff further claims that no mention was made of the fact that the board's decision to acquire Republic was kept confidential. But at the time of the challenged proxy solicitation, it was unnecessary to mention this since Fairchild's decision to acquire Republic had long since become public knowledge. In addition, at the time of the board's decision, it was clearly not in Fairchild's best interest to inform anyone (including their own shareholders) of the plan.

4 and 5. It is further claimed that the statement omitted to set forth Fairchild's entry into the market to acquire Republic shares, as well as the defendant directors' purchase of Fairchild shares. However, plaintiff is clearly in error since on page two of the challenged proxy statement mention is made of Republic purchases by both the corporation and the defendant directors, and their respective holdings are clearly set forth.

6. Plaintiff claims that no mention was made of any effort by Fairchild to recover the profits made by the defendants. However, Fairchild never intended to recover such profits, especially since it was the corporation itself which encouraged the individual directors to purchase Republic shares.

7 and 8. Plaintiff claims that the statement omitted to set forth the price at which the corporation, as well as the defendants, purchased Republic stock. However, the statement clearly notifies the shareholders that such purchases were made on the open market.

9. Finally, it is claimed that no mention was made of the profits to be realized by the defendants upon the amalgamation. However, the proxy statement informed Fairchild shareholders of the defendants' holdings of Republic shares and of the fact that each Republic shareholder (including the defendants) would receive Fairchild shares upon the amalgamation. It would thus appear obvious to any intelligent stockholder that all Republic stockholders would profit by the amalgamation. The extent of such profit could easily be calculated by a comparison of the price at which Republic shareholders purchased their shares and the value of the Fairchild shares they would

receive upon the completion of the amalgamation.

In Hoover v. Allen, supra, the Court dismissed a complaint under Section 14(a) when it failed to see how the corporation had been damaged as a result of a proxy statement. The Court held that some allegation of infringement upon corporate suffrage rights or some corporate action taken as a result of such statement was necessary to sustain an action under Section 14(a). Id. 241 F.Supp. at 230. And in Barnett v. Anaconda Co., supra, the Court was quite concerned with the element of causation. The Court felt that in order to sustain a cause of action under Section 14(a) it must be shown that the transaction under attack resulted from the issuance of the misleading proxy statement. Stated in other terms, there must be a causal connection between the violation of Section 14(a) and the claimed damages. Id. 238 F.Supp. at 772.

Turning to plaintiff's complaint in this case, the Court fails to see how Fairchild was damaged as a result of the proxy statement of September 1, 1965. Even if there were material misstatements or material omissions of fact (which the Court seriously doubts), the Court fails to see how the corporation took any adverse action as a result of these statements and how it was damaged thereby.

Plaintiff does not claim that the Fairchild shareholders would not have voted for the amalgation had the proxy statement set forth the facts which plaintiff claims it omitted. Nor does plaintiff claim that the action taken as a result of the proxy statement—the acquisition of Republic assets by Fairchild—resulted in any harm to Fairchild. To the contrary, all indications point to the fact that the amalgamation would prove quite beneficial to the corporation.

The only "damages" allegedly suffered by the corporation were the "impermissible profits" made by the defendants on their Republic stock upon the amalgamation. However, this damage has no real causal connection either with the alleged wrongful omission from the proxy statement or with the corporate action taken as a result of the proxy statement. The "damages" to the corporation resulted from the defendants' purchase of Republic shares which took place many months prior to the issuance of the proxy statement.

In conclusion, it is obvious that plaintiff has failed to state a claim for relief under Section 14(a). Whether plaintiff has a claim for violation of fiduciary duties or unjust enrichment under state law is beside the point. Barnett v. Anaconda Co., supra at 774.

Finally, plaintiff would do well to heed the words of this Court in Barnett v. Anaconda Co., supra at 770, wherein it is stated:

It has become increasingly common for minority shareholders claiming a grievance to sue in the federal courts upon the assumption that all violations of duties or obligations in the field of corporate affairs fall within the purview of the federal Securities Acts. But it must be remembered that, absent diversity, federal jurisdiction may not be invoked unless the controversy "arises" under the laws of the United States alleged to have been violated. * * * A careful analysis must be made to determine whether the claim of right on which federal suit is brought has its basis in a violation of federal law. * * *

Although Congress, in enacting the Securities Acts, intended to protect a broad spectrum of investors' rights against exploitation, it did not preempt the whole field of corporate affairs and transform the federal courts into a general forum to oversee them. * * * The question in each case is whether the claimed right of action arises under the sections of the Securities Acts relied upon and, whether the complaint states the requisites of a claim under such sections.

Plaintiff's complaint does not state the requisites of a claim under either Section 10(b) or Section 14(a) of the Securities Exchange Act, but at most

states a claim for violation of fiduciary duties under state law. Since plaintiff's cause of action under federal law is insufficient, plaintiff's cause of action under state law cannot be sustained under the doctrine of pendent jurisdiction. Plaintiff's complaint must be dismissed.

Defendants' motion for summary judgment is granted.

So ordered.