Elmer E. MILLS and Louis Susman, Plaintiffs,

v.

The ELECTRIC AUTO–LITE COMPANY, Mergenthaler Linotype Company and American Manufacturing Company, Inc., Defendants.

No. 63 C 1138.

United States District Court
N. D. Illinois, E. D.

Sept. 26, 1967.

Arnold I. Shure, Frank J. McGarr, Moses, McGarr, Gibbons, Abramson & Fox, Robert A. Sprecher, Crowley, Sprecher, Barrett & Karaba, Chicago, Ill., for plaintiffs.

Jerold S. Solovy, Raymond, Mayer, Jenner & Block, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

PARSONS, District Judge.

I am again called upon to contribute an increment to the Federal Common Law of Corporations as derived from judicial exegesis of the Securities and Exchange Acts. This cause involves Section 14 of the 1934 Act and Rule 14a–9 as affecting omissions in Proxy Statements with regard to a corporate merger. The issue before me is the existence of a causal connection of the omissions and the merger.

The case involves a derivative class action brought on behalf of minority stockholders who have challenged the merger of Electric Auto-Lite Company, herein referred to as "Auto-Lite", with Mergenthaler Linotype Company, herein referred to as "Mergenthaler", by alleging that the Proxy Statement contained certain omissions.

The complaint alleges that the Proxy Statement failed to reveal, in soliciting a two-thirds stockholders' vote for the merger, that the directors of both Mergenthaler and Auto-Lite were controlled by a third company, American Manufacturing Company. The defendants' answer failed to deny these allegations and the plaintiffs moved for summary judgment pursuant to Rule 56. I had granted the motion for summary judgment and the remaining issue is whether there was a causal connection between the omissions in the Proxy Statement and the merger.

In the hearing which I conducted, and considering the facts as revealed from the record before me, I find that this case involves a merger between Electric Auto-Lite Company and Mergenthaler Linotype Company.

Auto-Lite, though its principal place of business is in Ohio, has plants in over a score of states, including Illinois, Indiana and Michigan. In 1963, it had approximately 29 plants throughout the United States and Canada. Auto-Lite and its subsidiaries are principally engaged in manufacturing automotive electrical equipment, light helicopters, industrial batteries and instruments. Also, through its wholly owned subsidiaries, it is engaged in leasing industrial and business equipment. In 1962, the total net sales were $180,863,539. It had engaged in a policy of constantly acquiring smaller corporations and consolidating and expanding its activities.

Mergenthaler and its subsidiaries are engaged in the production and distribution of linotype machines and parts, Linofilm systems, and other printing equipment, and in the design and manufacture of military equipment. In 1962, it had net sales of $240,092,891, and distributes its products through sales offices in Atlanta, Boston, Chicago, Dallas, Los Angeles, New York and San Francisco. Distribution outside the United States is handled by foreign subsidiaries and a worldwide network of 57 distributors with offices in 11 countries.

Eltra Corporation, the merged entity, exists as a holding company to control the two, and thus both, presumably, would be engaged in the activity of determining major policy matters relating to automobile batteries, helicopters, the leasing of industrial equipment, the leasing of business machine equipment, the manufacture, distribution and maintenance of linotype and other printing machines and equipment, and the planning, manufacturing and distribution of various types of equipment used by our armed services in the United States and throughout much of the rest of the world. The merged entity has evolved into a leviathan which consumes smaller corporate giants and has thus attained the power to substantially affect the course of the national economy.

■ The Supreme Court in J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) had established the right of private enforcement of Section 14(a), and held that such a suit may be individual or derivative. The Federal Court also is given jurisdiction to grant relief. However, Mr. Justice Clark's opinion contained the following enigmatic statement:

It appears clear that private parties have a right under § 27 to bring suit for violation of § 14(a) of the Act. Indeed, this section specifically grants the appropriate District Courts jurisdiction over "all suits in equity and actions at law brought to enforce any liability or duty created" under the Act. The petitioners make no concessions, however, emphasizing that Congress made no specific reference to a private right of action in § 14(a); that, in any event, the right would not extend to derivative suits and should be limited to prospective relief only. In addition, some of the petitioners argue that the merger can be dissolved only if it was fraudulent or non-beneficial, issues upon which the proxy material would not bear. *But the causal relationship of the proxy material and the merger are questions of fact to be resolved at trial, not here. We therefore do not discuss this point further.* 377 U.S. at 431, 84 S.Ct. at 1559, emphasis added.

No reference to this issue is made in the Seventh Circuit decision, Borak v. J. L. Case, 317 F.2d 838 (7th Cir. 1963), nor in the order of the District Court, Civil Action File No. 56 C 247 (E.D.Wisconsin, 1956). Indeed, the Plaintiff-Respondent's brief asserted that the causal connection problem was not present. Brief of Plaintiff-Respondent, p. 37.

The Court in *Borak* did find that a corporate merger could be attacked on the basis of a new Federal cause of action created by Section 14(a). However, while an action brought under Section 10(b)—wherein the plaintiff seeks a money judgment to restore him to his prior position—is a private action, a Section

14 action is for enforcement of the statute since there may be no monetary recompense. As a derivative suit the action asserts the right of the corporation when the corporation refuses to assert that right itself. Comment, Private Rights and Federal Remedies: Herein of J. L. Case v. Borak, 12 U.C.L.A. L.Rev. 1161–7 (1966).

The motivating consideration is the protection of investors with private enforcement providing a supplement to Commission action with enforcement in the individual as well as the corporation. Id. 1168. However, because *Borak* was a decision based upon pleadings, brought by a plaintiff whose ownership was contemporaneous with the wrong alleged, the Court was not faced with the task of formulating new Federal standards to govern controverted factual issues. One such fact issue is the question of causality. The question is left to the lower Federal Courts for determination.

▮▮▮ A principal result of the *Borak* decision is that the lower Federal Courts have been given the mandate to further develop a Federal Common Law of Corporations. Since an action under Section 14 is for enforcement rather than to effectuate a private right, the Courts must be guided by overriding national policy involving considerations of the good of the economy, which may predominate over a puritanical concern for corporate honesty, as well as a concern for the protection of the investor. Since the action may be taken on behalf of the corporation, its interests may predominate over that of the individual investor. Within this context, I find that a causal connection existed in the present case between the omissions in the Proxy Statements and the merger.

Since the *Borak* decision, Federal Courts have had occasion to consider the issue of causality. However, a number of these cases involved the presence of intervening factors so that the omissions or misstatements did not affect the merger.

In Barnett v. Anaconda Company, 238 F.Supp. 766 (S.D.N.Y.1965), the Court held that the complaint failed to assert a causal connection between the statements in the Proxy Statement and the merger. However, the approval of the merger was a foregone conclusion, since the defendant owned more than the necessary number of shares to effectuate the merger. The Court reasoned that the merger would have been effectuated without the misleading statements. The decision, however, has been criticized in a law review note, which observes that the plaintiff was seeking not only rescission, but also damages suffered from the denial of his right to receive full value for his shares. This right is particularly in need of protection when the majority stockholder authorizing the sale is also the buyer. Delaware law, which was relevant in that case, provides that directors and majority stockholders have a fiduciary obligation to stockholders so that the defendant, as a majority stockholder would have been obliged to arrange the best possible terms in the sale and dissolution of the corporation's assets. Therefore, if the defendant's failure to provide pertinent proxy information violated Section 14, preventing the minority stockholders from protecting the true stock value, the necessary causal connection was present. Because of this misleading information, plaintiff's ability to enjoin the sale and dissolution under Delaware law, thereby protecting the value of his stock, may have been seriously impaired. Comment, 51 Iowa L.Rev. 515, 521 (1966).

In Hoover v. Allen, 241 F.Supp. 213 (S.D.N.Y.1965) a causal connection was absent because the complaint failed to allege that the misleading statements affected the corporation adversely. Moreover, no merger was involved.

In Eagle v. Horvath, 241 F.Supp. 341 (S.D.N.Y.1965), the Court in denying defendants' motion for summary judgment, found that "As a matter of law * * * defendants did not control the requisite two-thirds of both classes of [certain] stock issued and outstanding at the time

of the alleged violations * * *." Though the defendants had the necessary two-thirds control of the common stock, they had less than two-thirds of the preferred shares. Though they could redeem the preferred, they had not done so. The case is unclear as to what facts were presented and as to whether a summary judgment by the plaintiffs would have been granted.

No causal connection was found in Cohen v. Colvin et al., 266 F.Supp. 677 (1967), where the alleged benefit to the defendant occurred before the issuance of the Proxy Statement containing the false statements and omissions and the corporation was not adversely affected.

In Laurenzano v. Einbender, 264 F. Supp. 356, (E.D.N.Y.1966), Judge Dooling was troubled as to whether the doctrine of Barnett v. Anaconda, supra, be accepted and directed an immediate appeal of this question. He suggested that a causal connection might be inferred where, though the proxy statement was not a necessary or indispensable ingredient of the transaction, it was "calculatedly infused into the matrix of the transactions".

█ The cases appear to indicate that for a causal connection to exist the misrepresentations or omissions in the proxy statements must have a transactional function involving corporate action. Laurenzano v. Einbender, supra. The proxy statement must not be merely "randomly present" in the context of the transaction with no transactional function. Cohen v. Colvin, supra; Hoover v. Allen, supra; Robbins v. Banner Industries, Inc., CCH Fed.Sec.L.Rep. ¶ 91,861, p. 95, 950 (S.D.N.Y.1966).

█ Where the accused proxy material is not merely "randomly present" in the context of the transaction, a causal relationship is established as intimate and direct, particularly where a merger is involved. Laurenzano v. Einbender, supra. Such a direct causal relationship exists in the present case.

When false or misleading solicitation material has been used to secure stockholder approval of plans conferring pensions, bonuses or stock options to defendant directors relief appears well grounded. In those instances in which a plan would clearly have failed had the stockholders known the true facts, the plan may be terminated or rescinded with recoupment of any benefits previously conferred. Comment, supra, 12 U.C.L.A. L.Rev. 1150, 1181 (1966).

The cases which have considered the issue of causality have ignored the fact that an action under Section 14 is for enforcement. I had conducted a hearing to make a factual determination of the issue of causality, proceeding under the assumption that such a determination must be made as that suggested by the cases discussed above. But, after fully considering these cases and the opinion in Borak, along with the facts presented at the hearing, I have decided that Borak implies a different approach.

█ The Borak decision, by conferring upon the Federal Courts the authority to determine what type of relief may be granted for federally created rights, placed the Courts in a position where they may affect the national economy. As in Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), in the field of labor relations, the Federal Courts are now authorized to fashion a body of Federal Law for the enforcement of regulations of proxy solicitation. The Federal Courts may borrow from state law. But this development of Federal Common Law will grow on an ad hoc basis.

The course of development will be based upon a consideration of the needs of the national economy. In Borak, the plaintiff is given a right to sue derivatively under Section 14 in order to enforce the Securities and Exchange Act for the good of the corporation and the benefit of the economy.

█ Causal connection must be decided within this context. Finding a causal relationship is finding prima facie that the circumstances surrounding the merger are not in the interests of the

national economy as it relates to the industries involved in the merger so as to justify a derivative suit to prevent an existing corporation from evolving into the type of corporate structure which should not exist. From the evidence I have before me, I am convinced that the areas of industrial activity linked by the merger are so inherently unrelated as to cause the new corporation to fall in that category of business enterprises as referred to recently by the Supreme Court as constituting a conglomerate merger, and to be inherently dangerous to a healthy economy. United States v. Von's Grocery, 384 U.S. 270, 86 S.Ct. 1478, 16 L.Ed.2d 555 (1965); Federal Trade Commission v. Proctor & Gamble Co., 386 U.S. 568, 87 S.Ct. 1224, 18 L.Ed.2d 303 (1966); Rill, Conglomerate Mergers: The Problem of Super Concentration, 14 U.C.L.A. L.Rev. 947.

That finding being today completed and made, I am now able to proceed to complete my ruling on plaintiffs' motion for summary judgment and grant the motion and it is so ordered. The Master heretofore appointed by this Court to proceed with those matters resulting upon this order, but whose direction to proceed was held up by order of this Court pending the further determination of plaintiffs' motion for summary judgment, is now hereby directed to proceed forthwith. Quoting from my interim order of November 29, 1965, and redirecting the Master in the same language, I herein direct as follows:

(1) The Master shall act as his own counsel, but may use members and associates of his firm to assist him in his duties. He may employ such accountants and experts as he may deem necessary, but before doing so shall file an application with this Court for approval of such employment.

(2) The Master shall have the right to examine any and all corporate documents of Eltra, Mergenthaler and Auto-Lite as he may deem necessary, including, without limiting the foregoing, minute books, correspondence, proxy statements, annual reports, contracts and financial statements.

(3) The Master is authorized to hold such hearings, upon notice, as he may deem necessary, to take the testimony of the Officers and Directors of the above corporations, and to employ Court Reporters to take such testimony and transcribe the same. The Master shall file such testimony with his report thereon, with this Court.

(4) The Master shall perform such other duties as the Court shall order and direct, and shall generally perform such duties as are performed by Masters in Chancery in similar matters.

(5) In order to expedite the disposition of this litigation, the Court hereby directs the Master to make a preliminary report to this Court as promptly as possible.

The order entered today formally setting forth Findings of Fact and Granting Motion for Summary Judgment are incorporated herein by reference.