Adelburt **WASHBURN**, Plaintiff,

v.

**MADISON SQUARE GARDEN CORPORATION et al.**, Defendants.

No. 70 Civ. 4208.

United States District Court,
S. D. New York.

Jan. 18, 1972.

Sands, Geller & Webb, New York City, for plaintiff.

Paul, Weiss, Rifkind, Wharton & Garrison. Javits, Trubin, Sillcocks & Edelman, New York City, for defendants.

MOTLEY, District Judge.

*Memorandum Opinion*

Plaintiff joins two causes of actions in this suit against defendants. The

first alleges violations of the Securities Exchange Act of 1934 and regulations under it: Section 10(b), 15 U.S.C. § 78j(b); Rule 10b–5, 17 C.F.R. § 240.10b–5; § 13(d) (1), 15 U.S.C. § 78m(d) (1); Rule 13d–1, 17 C.F.R. § 240.13d–1, § 14(a), 15 U.S.C. § 78n(a); Rule 14a–9, 17 C.F.R. § 240.14a–9; § 14(d) (4), 15 U.S.C. § 78n(d) (4); Rule 14d–4, 17 C.F.R. § 240.14d–4 and § 14(e), 15 U.S.C. § 78n(e). This first cause of action is brought by plaintiff, a purchaser and holder of stock in Madison Square Garden Corporation (Madison), representatively on behalf of all purchasers of shares of common stock of Madison who are similarly situated to plaintiff (Complaint ¶ 26). Jurisdiction is based on § 27 of the Securities Exchange Act, 15 U.S.C. § 78aa.

The second cause of action asserts a claim under common law for corporate waste and breach of fiduciary duty by the defendant directors of Madison. This cause is brought derivatively for the benefit of Madison. Jurisdiction is based on the doctrine of pendent jurisdiction with the federal claim in the first cause of action.

Those defendants who thus far have been served with the complaint now move pursuant to Rule 12(b), Fed.R. Civ.P., to dismiss the complaint for failure to state a claim. They also move to dismiss for lack of jurisdiction, for should the federal claim fall, this court would no longer have jurisdiction of the common law derivative suit embodied in plaintiff's second cause of action. For the reasons given below, we find that plaintiff's complaint ·fails to state a claim under the federal securities laws. We therefore dismiss the entire complaint.

## I. *Statement of Facts*

The activities alleged in the complaint center around a battle for control and ownership of Roosevelt Raceway, Inc. (Roosevelt). In September 1969 a wholly-owned subsidiary of Madison, Eastern International Corporation (Eastern), owned 348,200 shares of Roosevelt stock.

G & W Land and Development Corp. (G & W) began a tender offer to purchase 400,000 shares of Roosevelt at a net cash price of $46.50 a share on September 22, 1969. At the close of trading on Friday, September 19, 1962 a share of Roosevelt common stock was selling at $37.50, and on September 18 was $42.50.

In response to the tender offer, Madison began purchasing and "inducing others to purchase shares of common stock of Roosevelt" to drive the market price of Roosevelt over the tender price for the period of the offer. Madison's subsidiary, Eastern, purchased 20,000 shares of Roosevelt and purchased options for another 5,000 shares on September 22 and 23, 1969. "These acquisitions exhausted most of the working capital available to Madison." (Complaint ¶ 42(b).)

On September 24, 1969, Madison made an arrangement with Goldman-Sachs & Co. (Goldman) under which Goldman would buy up to 120,000 shares of Roosevelt on the market at any price. It would then hold the shares for one year, after which it would have the right to sell the shares to Madison for 120% of their purchase price. In a press release issued September 26, 1969, Madison reaffirmed its previously announced intention to acquire 100% ownership of Roosevelt and announced its agreement with Goldman.

Goldman purchased 25,000 shares of Roosevelt for its own account and 71,000 shares for the accounts of investors between September 24 and October 1, 1969. Harbill Associates (Harbill) also made substantial purchases under a similar plan. These purchases, plaintiff contends, eliminated the normal incentive for Goldman and Harbill to purchase at the lowest available price and served artificially to inflate the market price of Roosevelt common stock above the tender offer price of G & W. Investors in Roosevelt common stock were thus dissuaded from tendering their shares to G & W and "may be injured thereby."

The complaint goes on to allege that the cost of the Roosevelt stock to Madison exceeded its value. In July 1970, six of Madison's directors were elected directors of Roosevelt. In late 1970 and early 1971 Madison reached an agreement to purchase outstanding Roosevelt common shares at a set price.

Plaintiff claims that these facts amount to violations of the various security law provisions noted above. He seeks an accounting by the individual defendants to Madison, an injunction against continuation of the alleged acts and practices, compensatory damages for members of the class, punitive damages from the individual defendants, and attorneys' fees and expenses. We shall address the claims under the different securities provisions individually.

## II. *Section 10(b) and Rule 10b–5*

▮ These well known provisions in essence outlaw fraudulent devices and practices and untrue statements or omissions of material facts. Plaintiff's claim under these sections fails on several grounds.

First, the complaint does not charge defendants with any particular "fraudulent," "deceptive," "misleading" or "untrue" acts or statements relating to the events summarized above. Without allegations that the acts charged in the complaint somehow fall within the ambit of § 10(b) and Rule 10b–5, the claim cannot be sustained. O'Neill v. Maytag, 339 F.2d 764, 767–768 (2d Cir. 1964); Cohen v. Colvin, 266 F.Supp. 677, 681–683 (S.D.N.Y.1967).

The only mention of the terms in the section and the rule is in paragraph 8 of the complaint, under the heading "Class Action Allegations." There the plaintiff refers to a "misleading and fraudulent annual statement, dated May 31, 1970, issued by defendants," the "activities of defendants in falsely disseminating incorrect and misleading information concerning the future growth and activities of Madison," and the "issuance of false and misleading financial and factual re-ports to the public." Nowhere in the complaint are these allegations explained or described, nor even mentioned again. Such conclusory allegations, unaccompanied by even the barest account of the nature and content of the misleading reports, do not state an actionable claim. O'Neill v. Maytag, *supra*, at 768; Cohen v. Colvin, *supra*, at 682. This result is further supported by Rule 9(b), Fed.R. Civ.P.: "In all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity."

The complaint's second deficiency is the failure to plead facts showing a causal relation between defendants' actions and plaintiff's injury. Indeed, the complaint does not even allege that plaintiff engaged in a securities transaction. Rule 10b–5 requires that the proscribed conduct be "in connection with the purchase or sale of any security." Plaintiff attempts to cure his failure to plead the requisite connection between a purchase or sale by submitting an affidavit in opposition to defendants' motion to dismiss. In his affidavit, plaintiff states that he purchased 100 shares of Madison common stock on December 2, 1968 at $11.125 and sold an unspecified amount of stock on September 30, 1970 at $3.75 a share.

Aside from the fact that necessary elements of a cause cannot be haphazardly pleaded in motion papers, even with his affidavit, plaintiff still fails to establish a claim under 10(b) and 10b–5. His theory is that defendants' "fraudulent" response to the G & W tender offer had a "direct impact upon the value of Madison's common stock on the 'open market'." (Plaintiff's brief at 11). Presumably, plaintiff implies that the market price declined. However, even assuming that fraudulent activities of defendants did cause the value of Madison's common stock to decline, there is no showing that plaintiff was in any way induced by defendants' fraud to sell his shares in September 1970 or that he relied on fraudulent statements or acts to his detriment.

Plaintiff sold his stock in September 1970, months after the events described in the complaint. There are no allegations that defendants' alleged wrongdoing induced plaintiff's decision to retain the stock or sell it when he did. Likewise, defendants' conduct did not affect plaintiff's purchase of the stock in 1968. He is therefore not entitled to sue for damages under § 10(b) or Rule 10b–5. As was recently stated in Marino v. Coburn Corp., CCH Fed.Sec.L.Rep., ¶ 92,959 (E.D.N.Y.1971):

> [T]he cases . . . demonstrate that plaintiff, to come within Rule 10b–5 must be complaining about a decision with respect to the purchase or sale or retention of stock which has been determined or materially influenced by the device or misleading statements or deceitful practice of which the plaintiffs complain.

See also Iroquois Indian Industries, Inc. v. Syracuse China Corp, 417 F.2d 963, 968 (2d Cir. 1969); SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 860 (2d Cir. 1968); Bluestein v. Friedman, CCH Fed.Sec.L.Rep. ¶ 92,558 (S.D.N.Y. 1970); Sprayregen v. Livingston Oil Co., 295 F.Supp. 1376, 1378 (S.D.N.Y. 1968).

■ Plaintiff thus does not have a cause of action under § 10(b) and Rule 10b–5 against defendants. This does not necessarily mean that no other shareholders were injured or that the corporation was not injured. We only hold that plaintiff does not have a personal claim. He therefore cannot represent any class in this suit. See e. g. 3 B Moore, Federal Practice ¶ 23.04 (2d ed. 1969).

This case seems yet another example of a disturbing trend recently noted with dismay by the Second Circuit: "namely, invocation of the salutary anti-fraud provisions of the federal securities laws in cases where those provisions are wholly inappropriate and wide of the Congressional mark." Ryan v. J. Walter Thompson Co., 453 F.2d 444 (1971).

### III. Section 13(d) (1) and Rule 13d–1

■ Section 13(d) (1) and Rule 13d–1 require persons owning more than 10% of a class of securities to file certain information within ten days of acquiring ownership. Plaintiff does not state how he was damaged by defendants' alleged failure to comply. We are cited no cases holding that these filing requirements create a private right of action for a stockholder. It may be that such a holding would be appropriate where a stockholder could show injury resulting from violation, but no injury is shown here. These provisions do not state a cause of action for plaintiff.

### IV. Section 14(a) and Rule 14a–9

■ Section 14(a) and Rule 14a–9 outlaw false or misleading statements or the omission of material fact in solicitations by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral. "The purpose of § 14(a) is to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation." J. I. Case v. Borak, 377 U.S. 426, 431, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964). Here however, there is no allegation of any deceptive or inadequate proxy solicitation or, indeed, any proxy solicitation at all. The claim under § 14(a) is therefore groundless. Cf. Hoover v. Allen, 241 F.Supp. 213, 230 (S.D.N.Y.1965).

### V. Section 14(d) (4), Rule 14d–4 and Rule 14(e)

■ Section 14(d) (4) and Rule 14d–4 require a person soliciting acceptance or rejection of a tender offer to file certain information with the Securities and Exchange Commission. Here again, we are cited no case granting a private right of action under these provisions. Plaintiff does not claim to have been solicited in connection with a tender offer, nor to have been damaged by defendants' alleged failure to file the requisite information and therefore has no personal claim.

Section 14(e) prohibits false or misleading statements "in connection with any tender offer . . . or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation." 15 U.S.C. § 78n(e). As stated above, plaintiff was not the target of any tender offer or solicitation, nor is there any specification of false or misleading statements in the alleged tender offer made to Roosevelt shareholders. Plaintiff, of course, has no standing to represent the Roosevelt shareholders, and therefore has no standing to sue under 14(e) in this action.

## VI. *Conclusion*

Plaintiff has no cause of action for damages on behalf of himself or those he seeks to represent, either because he does not state a legally sufficient claim or because he has no standing to raise the contention. He, therefore, has no claim for damages, either actual or punitive under the securities law. The complaint also seeks to enjoin defendants from "continuing the acts complained of and from consummating the proposed transactions with Roosevelt and Transnation." It is unclear whether plaintiff seeks this relief on his own behalf or derivatively in the name of the corporation. In any case, plaintiff does not claim that the illegal acts charged to defendants are continuing or are likely to be repeated. There are no allegations even hinting at a "reasonable expectation" of a recurring violation by defendants. SEC v. Culpepper, 270 F.2d 241, 249 (2d Cir. 1959). As for plaintiff's prayer to enjoin the transaction pending in 1970 between Madison, on the one hand, and Roosevelt and Transnation on the other, there are no allegations that this transaction would be violative of the securities laws. It thus cannot be enjoined on plaintiff's first cause of action.

In sum, plaintiff fails to state a claim for any relief under the federal securities laws, and his first cause of action is dismissed on that ground. Without a valid federal claim to be "pendent" upon, his second cause of action must be dismissed for lack of jurisdiction.

In the closing pages of his brief, plaintiff seems to request leave to amend his complaint if the court decides to grant the motion to dismiss. He has already had a lengthy period in which to amend without leave of court pursuant to Rule 15(a), Fed.R.Civ.P., an opportunity he has ignored. He does not now present any facts which, if added to the complaint, would allow it to withstand a motion to dismiss. In fact, in the interests of judicial efficiency the court has already considered the contention made in plaintiff's answering affidavit that he purchased Madison shares in 1968 and sold some in September 1970. There is no indication that the addition of this fact or any other the plaintiff could legitimately plead would cure the deficiencies of the complaint. In these circumstances leave to amend is inappropriate. See John Birch Society v. National Broadcasting Co., 377 F.2d 194, 198–199 (2d Cir. 1967); Christophides v. Porco, 289 F.Supp. 403, 408 (S.D.N.Y. 1968).

Submit order on 5 days' notice.